UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARITZ INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:06-CV-761 CAS |
| | ) |
| C/BASE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Swift Prepaid Solution, Inc. a/k/a Swift Gift, Ltd.'s ("Swift") motion to dismiss for lack of personal jurisdiction and improper venue under Rule 12(b)(2) and (3), Federal Rules of Civil Procedure. In the alternative Swift moves for transfer of this action to the United States District Court for the Northern District of Illinois, Eastern Division. Plaintiff Maritz Inc. opposes the motion to dismiss, and in the alternative moves for the opportunity to conduct discovery limited to the issue of personal jurisdiction. Swift did not file a reply memorandum and the time to do so has passed. For the following reasons, the Court will deny Swift's motion to dismiss for lack of personal jurisdiction and improper venue, deny Swift's alternative motion to transfer based on improper venue, and deny as moot plaintiff's motion for jurisdictional discovery.

**Background**.

Maritz filed this action against a number of defendants alleging infringement of U.S. Patent Nos. 5,689,100 ("the '100 Patent") and 5,956,695 ("the '695 Patent"). The patents relate to computer-based card systems and related methods that allow cardholders to obtain products and/or

services from authorized merchants through a credit/debit card network. Maritz brought this action alleging that the defendants have willfully infringed the '100 Patent and the '695 Patent by making, using, offering for sale or selling programs covered by one or more apparatus and/or method claims of the patents, and by practicing, inducing and/or contributing to the practice of apparatus and methods covered by one or more claims of the patents.

**Personal Jurisdiction Standard**.

A party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996). To defeat a motion to dismiss for lack of personal jurisdiction, however, the non-moving party need only make a prima facie showing of jurisdiction. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)). Because the Court relies on pleadings and affidavits, and did not conduct an evidentiary hearing, it must view the evidence in the light most favorable to the plaintiff, and determine all factual conflicts in its favor. Digi-Tel, 89 F.3d at 522; Radaszewski by Radaszewski v. Telecom Corp., 981 F.2d 305, 309-10 (8th Cir. 1992), cert. denied, 508 U.S. 908 (1993). "[J]urisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, the court may exercise personal jurisdiction over a defendant if the defendant is subject to the court's jurisdiction under the forum state's long-arm statute and if the defendant has sufficient contacts with the forum state to satisfy due process. Omni Capital Int'l, Ltd. v. Rudolf

Wolff & Co., Ltd., 484 U.S. 97, 104-05 (1987); Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). When considering whether personal jurisdiction exists under the long-arm statute, it is permissible to consider matters outside the pleadings. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947), overruled by implication on other grounds by Larson v. Domestic & Foreign Commerce Corp, 337 U.S. 682 (1949)).

The Missouri long-arm statute provides that an individual or company submits to personal jurisdiction of the courts of the State of Missouri for any cause of action arising from, inter alia, the (1) transaction of any business within the state, (2) the making of any contract within the state; and (3) commission of a tortious act within the state. See Mo. Rev. Stat. § 506.500 (2000). Missouri construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause within the specific categories enumerated in the statute. State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc); see Clune v. Alimak AB, 233 F.3d 538, 538, 541 (8th Cir. 2000), cert. denied sub nom Industrivarden Serv. AB v. Clune, 533 U.S. 929 (2001). As a result, the critical inquiry in the personal jurisdiction analysis is whether the exercise of personal jurisdiction over the defendant comports with federal due process standards. Clune, 233 F.3d at 541.

The Due Process Clause limits the power of a state to assert personal jurisdiction over a nonresident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984). A state may exercise personal jurisdiction over a nonresident defendant consistent with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer,

3

311 U.S. 457, 463 (1940)). "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." Calder v. Jones, 465 U.S. 783, 788 (1984) (citations and internal quotations omitted). The defendant's contact with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A party may anticipate being haled into court in a particular jurisdiction if it "purposefully directed" its activities at residents of the forum, and the litigation results from an alleged injury that "arises out of or relates to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted).

The relevant contacts with the forum state must be more than random, fortuitous or attenuated. Id. at 475 (citations omitted). A defendant must have purposefully availed itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The Due Process Clause precludes personal jurisdiction unless the actions of the defendant created a "substantial connection" with the forum state. McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957).

When deciding an issue of personal jurisdiction in a patent case, a district court must apply law of the Federal Circuit, because the Federal Circuit has exclusive jurisdiction over an appeal from such a case. 3D Systems, Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998). The Federal Circuit has "adopted a three-factor test embodying the Supreme Court's jurisprudence on specific personal jurisdiction." Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003) ("Coyle"), cert. denied, 540 U.S. 1111 (2004). To determine whether jurisdiction over an out-of-state defendant comports with due process under the Federal Circuit test, a court must examine whether "(1) the defendant purposefully directed its activities at residents of the forum state,

4

(2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Coyle, 340 F.3d at 1350. "The first two factors correspond to the 'minimum contacts' prong of the International Shoe analysis, and the third factor with the 'fair play and substantial justice' prong." Id. (citations omitted). When the plaintiff meets its burden to establish such contacts, the burden shifts to the defendant to prove that the exercise of jurisdiction is unreasonable. Id.

**I. Motion to Dismiss for Lack of Personal Jurisdiction**

**Parties' Arguments.**

Swift asserts that it does not have sufficient minimum contacts with the State of Missouri to subject it to personal jurisdiction. David Lasky, President of Swift, avers that Swift (1) is an Illinois corporation with its place of business in Buffalo Grove, Illinois; (2) does not have any offices, facilities or employees located or operating in Missouri; (3) uses a prepaid debit card system to deliver cash rebates and cash incentive awards to its clients, who in turn approve, fund and distribute the cards to third-party participants; (4) does not offer the services of its prepaid debit card systems directly to the public; (5) sells its prepaid debit card system services to clients through contractual arrangements which are negotiated at its headquarters in Illinois, and that the contracts, purchase orders and invoices are generated and administered in Illinois; (6) has no control over the parties designated for distribution of the prepaid debit cards once it makes a sale to its client or sponsor; and (7) does not have any clients in Missouri and does not do business in Missouri.

Swift argues that based on the foregoing, it has done nothing to purposefully avail itself of doing business in Missouri or to direct its activities to the residents of Missouri. Swift contends that even if one of its cards entered Missouri in the stream of commerce, the mere introduction of a

5

product into the stream of commerce is insufficient to establish personal jurisdiction, and some other act is required to satisfy constitutional due process requirements, citing Asahi Metal Indus. Co., Ltd. v. Superior Ct. of California, 480 U.S. 102, 113 (1987). Swift also argues that the claim does not arise out of its activities in Missouri, as patent infringement occurs when a party without authorization makes, uses, sells or offers to sell any patented invention. Swift asserts that the alleged infringement in this case is of a computer program, and contends that it made the allegedly infringing computer program and debit card system exclusively within the State of Illinois.

Finally, Swift argues that it would be unfair and unreasonable to require it to defend this action in Missouri because (1) it does not have minimum contacts with the forum, (2) it has not directed its activities within Missouri, (3) all of its allegedly improper conduct occurs exclusively in Illinois, and (4) most if not all of the necessary witnesses and documentation are located in Illinois and it would be unduly burdensome for Swift to transport these witnesses and documents to Missouri from northern Illinois. Swift also asserts that in a substantially similar matter, Judge Stohr of this district granted a motion to dismiss for lack of personal jurisdiction, see Meridian Enterprises Corp. v. C/Base Inc., No. 4:04-CV-1522 DJS (E.D. Mo. Aug. 16, 2005).

Maritz responds that Swift's computer-based prepaid card system infringes its patents, and that anyone who makes, uses, offers to sell, sells or imports a patented system infringes the patent under 35 U.S.C. § 271(a). Maritz asserts that Swift uses its prepaid card system to provide services to customers, employees and clients of large companies across the country. Maritz asserts that although Swift's large company clients pay Swift's bills, Swift provides services directly to the cardholder, and intentionally distributes its prepaid card products throughout the United States, knowing that the cards are being distributed to end users in the Eastern District of Missouri. Maritz

6

asserts that when a Swift card--which is associated with the accused Swift card system--is used by a cardholder to make a purchase, the situs of infringement is the location where the card is being used. Maritz contends that because acts of infringement are occurring in the Eastern District of Missouri, personal jurisdiction exists over Swift.

Maritz states that Swift's Internet website, www.swiftprepaid.com, identifies a list of "Select Clients" to which Swift has provided prepaid card products and services, including Domino's Pizza, SBC, AT&T and United Parcel Service ("UPS").[1] Maritz states that in the St. Louis area alone, there are forty-four individual locations for Domino's Pizza and a franchise office; SBC and/or the new AT&T have a significant presence in the Eastern District of Missouri, with thousands of employees and customers here; and UPS has fourteen UPS stores and two retail shipping offices in the St. Louis area alone. Maritz asserts that any prepaid card program involving consumers, clients or employees of these corporations identified by Swift undoubtedly involve cardholders from Missouri, including the Eastern District of Missouri, and such programs also certainly involve authorized merchants in the Eastern District of Missouri who accept Swift's prepaid cards for payment from Swift cardholders and initiate transactions in this district.

Maritz notes that Swift's motion to dismiss does not deny that Missouri residents and residents of this district are cardholders in one or more of its prepaid card programs. Maritz asserts that Swift provides a number of services directly to its cardholders, including shipping and cardholder support. Maritz states that through the interactive website, Swift provides a number of services to its cardholders throughout the United States pursuant to a contractual agreement between Swift and each of the cardholders that use Swift's web-based services. Through its website, Swift permits

---

[1]The Court has accessed the Swift website.

cardholders to log into its computer systems and check their account balance. By entering the first nine digits of their card number, Swift's website permits cardholders to download the terms and conditions for their particular prepaid card program.

Maritz also asserts that when Swift utilizes the MasterCard network option to provide its prepaid card products and services, a significant portion of the processing is done in the Eastern District of Missouri at MasterCard International's Global Technology and Operations Center located at Winghaven in O'Fallon, Missouri. The O'Fallon location processes about 40 million card transactions per day, sorts out settlements for 25,000 members, and clears approximately $1 trillion worth of purchases each year. Maritz asserts that the card network is the critical link between the merchants, which accept Swift's prepaid cards, and Swift's (or its agent's) databases, which store the participant's account information and authorize the transaction.

Based on the foregoing, Maritz argues that Swift has significant contacts with this district, and purposefully directs its activities at Missouri residents by directly providing many services to its cardholders throughout the United States, including through its Internet website. Maritz argues that Swift does not merely place its cards in the stream of commerce in Illinois, but rather is a service provider and its service only begins when the cards are shipped. Maritz contends that the "core of the service offered by Swift is allowing cardholders to access the value associated with the cards by allowing them to use the cards to purchase goods or services at authorized merchants." Maritz Mem. Opp. at 7-8. Maritz states that Swift's card system includes the cards themselves, the credit/debit card network, and the processors and databases that are involved in authorizing and settling the card transactions. Because of this, Maritz argues that the geographic scope of Swift's system is limited only by where the cardholders can use their cards to access the card's stored value.

8

Maritz asserts that a cardholder's use of Swift's accused card products in Missouri constitutes direct infringement of the system claims of the '100 and '695 patents under 35 U.S.C. § 271(a), and by accepting and facilitating these transactions and providing the other cardholder services discussed above, Swift is actively inducing this direct infringement under 35 U.S.C. § 271(b). In support, Maritz cites NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1174 (2006), which held that the "use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." Id. at 1317. The Research in Motion case, which concerned the BlackBerry wireless e-mail system, held that the BlackBerry system was "used" where customers used their handheld devices to access the e-mail system. Id. Maritz contends that when Swift's cardholders use a Swift prepaid card to purchase a product or service, they control the transmission of the transaction data being transmitted over Swift's card system and benefit from this exchange of information, and this constitutes an infringing "use" of the system under Section 271(a).

Maritz argues that the assertion of personal jurisdiction over Swift in this district is fair and reasonable because Swift has sufficient contacts with the district to satisfy due process and its claims against Swift arise out of Swift's activities in the district. Maritz also argues that requiring Swift's witnesses to make the short flight from Chicago to St. Louis in the event of trial does not qualify as one of the "'rare' situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable." Coyle, 340 F.3d at 1352. In the alternative, Maritz requests leave to conduct jurisdictional discovery.

**Discussion**.

As stated above, under the Federal Circuit's three-part test for personal jurisdiction, a court must examine is whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Coyle, 340 F.3d at 1350.

The fundamental basis for minimum contacts is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475. The Supreme Court has stated that personal jurisdiction may be exercised consonant with due process "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen, 444 U.S. at 298. In the Supreme Court's most recent discussion of the stream of commerce theory, Justice O'Connor opined that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi, 480 U.S. 102, 113 (1987). Five justices refused to adopt Justice O'Connor's articulation of a stream of commerce "plus" theory, and Justice Brennan's position, adopted by three others, was that such "additional conduct" is not needed when the defendant places goods in a stream of commerce defined as "the regular and anticipated flow of products from manufacture to distribution to retail sale." Id. at 117.

The Federal Circuit has not resolved whether to follow Justice O'Connor's interpretation of the stream of commerce standard or Justice Brennan's. See Commissariat A L'Energie Atomique v. Chi Met Optoelectronics Corp., 395 F.3d 1315, 1322 (Fed. Cir. 2005). For purposes of this case, the result is the same under either standard. When the evidence is viewed in the light most favorable

to Maritz, it is clear that Swift does more than merely place its prepaid cards in the stream of commerce in Illinois, from whence they drift to places unknown. Swift's business involves not only the issuance of prepaid cards to its clients, but also the provision of substantial services to the individuals to whom the cards are given by Swift's clients. Swift offers services such as shipping the cards to cardholders, permitting cardholders to check their card balances or transaction activity through Swift's website or interactive voice response system, permitting cardholders to get the terms and conditions for a specific card program from Swift's website, and providing "[l]ive, multi-lingual 24/7/365 customer service." See Ex. 10 to Maritz' Mem. Opp.

The evidence indicates that Missouri residents are using Swift's prepaid cards at Missouri merchants. Swift does not assert that its cards are not used in Missouri. Swift provides prepaid card products and services to Fortune 2000 companies "and their consumers, clients or employees." As discussed above, Swift's list of "Select Clients" on its website includes a number of entities, whose "consumers, clients or employees" have a significant presence in the St. Louis metropolitan area alone. In the course of providing prepaid card programs and services to these clients, Swift is undoubtedly providing these products and services to Missouri residents. See Commissariat, 395 F.3d at 1320 (circumstantial evidence of contact with the forum state can be sufficient to establish jurisdiction when defendant fails to rebut the factual inference).

By providing services to Missouri cardholders after the cards have been distributed and accepting card transactions initiated by Missouri cardholders, Swift's actions meet even the more stringent stream of commerce "plus" standard. See, e.g., Asahi, 480 U.S. at 112 (additional actions, such as "establishing channels for providing regular advice to customers in the forum State," satisfies

the standard set forth by Justice O'Connor). Swift has therefore purposefully directed its activities to the residents of this district.

The Court also concludes that Maritz's claim arises out of and relates to Swift's activities in Missouri. Swift's card system includes the prepaid cards, the merchants' point of sale equipment that accepts the cards, and the credit/debit card network and related processors that authorize the card transactions. A cardholder's use of Swift's accused card products in Missouri would constitute direct infringement of the system claims of the '100 and '695 patents under 35 U.S.C. § 271(a). By accepting and facilitating these card transactions, and providing the other cardholder services discussed above, Swift is actively inducing direct infringement under 35 U.S.C. § 271(b). When Swift's cardholders use a Swift prepaid card to purchase a product or service, they control the transmission of the transaction data being transmitted over Swift's card system and benefit from this exchange of information. This constitutes an infringing "use" of the system under § 271(a).

This case is readily distinguishable from the Meridian Enterprises decision on which Swift relies. In Meridian Enterprises, which concerned a patent infringement claim on a computer programming and data processing system for a credit card incentive award program, Judge Stohr concluded that Meridian did not allege any act other than "the mere fortuitous entry of some cards into Missouri, that would establish personal jurisdiction." Meridian Enterprises, No. 4:04-CV-1522, slip op. at 5 (Aug. 16, 2005). Judge Stohr also concluded that Meridian could not establish that its claim arose out of the defendant's alleged contacts with Missouri, because it did not allege that any infringing card had been used in Missouri. Id. at 6. In contrast, as discussed above, there is evidence in this case that the entry of Swift's cards into Missouri is not fortuitous, because some of its "Select Clients" have a significant presence in this district and Swift has an extensive service network

including its interactive Internet website to offer services to the cardholders themselves. There is also evidence that the Swift cards have been used by cardholders in this district and, with respect to MasterCard cards, processed in this district. Judge Stohr noted that if a cardholder used one of the cards in Missouri--as Maritz asserts occurs in Swift's issuance of cards to clients in this district--such use would "involve use of the allegedly infringing computer program." Id. at 6-7.

Swift asserts that the assertion of personal jurisdiction over it is unreasonable and unfair because it does not have minimal contacts with the forum, has not directed its activities within Missouri, has no employees or offices in Missouri, and all of its allegedly improper conduct occurs exclusively in Illinois. Swift also asserts that most, if not all, necessary witnesses and documentation are located in Illinois, and that it would be unduly burdensome for it to be required to transport these witnesses and documents to Missouri from northern Illinois to defendant plaintiff's claims, when it has had no contact within Missouri.

The Court has determined that Swift does have sufficient minimum contacts with the forum to justify the exercise of personal jurisdiction. Once a plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes the defendant's burden to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. "The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." Coyle, 340 F.3d at 1352 (citations omitted).

Swift has not demonstrated that it would be unreasonable for the Court to exercise jurisdiction over it. First, the geographic burden for Illinois defendants to litigate in Missouri is slight. Second, Missouri has a substantial interest in protecting its residents from injuries, including patent infringement. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir.), cert. dismissed, 512 U.S. 1273 (1994) . Missouri "also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action." Id. Third, Maritz has a substantial interest in protecting its patents from infringement. Fourth, concerning the interstate judicial system's interest in obtaining efficient resolution of disputes, if Maritz's claims against Swift were transferred to Illinois, there would be two cases concerning this dispute, which would result in an inefficient and wasteful duplication of effort by two courts. Finally, there is no conflict between the interests of Missouri and Illinois in furthering their own respective substantive laws, as the same body of federal patent law would govern the patent infringements claim regardless of the forum. For these reasons, the Court concludes that the exercise of personal jurisdiction over Swift is fair and reasonable.

Based on the facts set forth above and relevant precedent, the Court concludes that Maritz has met its burden to establish a prima facie showing that defendant Swift has sufficient minimum contacts with the State of Missouri to permit the exercise of personal jurisdiction over it consistent with due process principles. As a result, Swift's motion to dismiss for lack of personal jurisdiction should be denied.[2] The Court will deny plaintiff's request for jurisdictional discovery as moot.

---

[2] Although the title of Swift's combined motion and memorandum includes a motion to dismiss for lack of venue under Rule 12(b)(3), Fed. R. Civ. P., Swift does not address dismissal for improper venue in the body of its memorandum. As a result, the Court need not address this matter further. Nonetheless, such a motion would be without merit. Under 28 U.S.C. § 1400(b), venue in a patent case is proper where the defendant "resides," or where it "committed acts of infringement and has

## II. Alternative Motion to Transfer Venue

In the alternative, Swift moves the Court to transfer venue to the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1404(a). Swift asserts that in determining such a motion, the Court should consider (1) the plaintiff's choice of forum; (2) the convenience of the parties and the witnesses; and (3) the interests of justice, citing Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248, 254 (7th Cir. 1996). Swift argues that Illinois is the location where the alleged infringement occurred and where virtually all of the alleged events giving rise to this litigation occurred, and that plaintiff and Swift are each subject to the personal jurisdiction of the Illinois courts.

Maritz responds that Swift's alternative motion to transfer venue should be denied because (1) the convenience of the parties and witnesses weighs against transferring the case; and (2) the interests of justice and the conservation of judicial resources weigh against transfer because it would result in the inefficient and unnecessarily duplicative expenditure of judicial resources, as there are multiple defendants in the case which would remain in this district; and it would significantly increase Maritz's costs if it were required to litigate the same issues in two different forums.

As a procedural matter, the motion to transfer venue is governed by the law of the Eighth Circuit. See Storage Technology Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003). The Eighth Circuit has stated that federal courts generally give "considerable deference to a plaintiff's

---

a regular and established place of business." 28 U.S.C. § 1400(b). Under 28 U.S.C. § 1391(c), a corporate defendant resides where it is subject to personal jurisdiction. Thus, in a patent infringement case, venue is proper in any judicial district where the defendant is subject to personal jurisdiction. See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1578, 1584 (Fed. Cir. 1990), cert. denied, 499 U.S. 922 (1991). Because the Court has concluded that Swift is subject to personal jurisdiction in this district, the motion to dismiss for improper venue should be denied.

choice of forum and thus the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir.), cert. denied, 522 U.S. 1029 (1997). The Court may not disturb a plaintiff's choice of forum unless a balance of relative considerations tips strongly toward the defendant. Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 959 (E.D. Mo. 2001) (citations omitted).

Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

The initial inquiry in ruling on a motion under § 1404(a) is whether this case "might have been brought" in the Northern District of Illinois. As noted above, venue in a patent case is proper in any district where the defendant resides. See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1578, 1584 (Fed. Cir. 1990), cert. denied, 499 U.S. 922 (1991). Swift is an Illinois corporation with its principal place of business in Buffalo Grove, Illinois. Therefore, this action could have been brought initially in the Northern District of Illinois.

In determining whether or not to transfer venue, the Court must consider the three general categories of factors stated in § 1404(a): (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) whether the transfer would be in the interest of justice. Terra Int'l, 119 F.3d at 691. "Courts have not, however, limited a district court's evaluation of a transfer motion to these

enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."[3] Id.

In this case, the convenience of the parties is in balance. It is more convenient for Maritz to litigation this action here, and it is more convenient for Swift to litigate in the Northern District of Illinois. This factor therefore does not weigh in favor of transfer, as transfer would merely shift the inconvenience from Swift to the plaintiff. "Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." Terra Int'l, 119 F.3d at 697 (internal quotation omitted).

Swift summarily asserts that the convenience of the witnesses is best served by transfer, but it does not identify its own witnesses or those of the plaintiff. In order to overcome the plaintiff's choice of venue, a defendant must show "(a) . . . who the witnesses are and where they reside, and (b) in a general way stat[e] what defendant proposes to prove by said witnesses. This emphasizes the probative value of the expected testimony, rather than the number of witnesses defendant plans to call." Savage v. Kaiser Motors Corp., 116 F. Supp. 433, 434 (D. Minn. 1953). The Court does not have facts before it from which it can balance the convenience of the witnesses because it does not know who the witnesses are, where they reside, what their expected testimony is, or how many

---

[2]Factors which courts have considered in deciding a motion to transfer under § 1404(a) include, under the "convenience" prongs, (1) the convenience of the parties, (2) the convenience of the witnesses--including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) accessibility of records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each state's forum law. Factors considered under the "interest of justice" prong include (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. See Terra Int'l, 119 F.3d at 696.

17

witnesses there are. As a result, the Court finds that Swift has failed to show that the convenience of the witnesses factor favors transfer of the case.

Finally, the interests of justice and the conservation of judicial resources weigh against transfer. Swift is one of several defendants remaining in this action. Transfer of Maritz's infringement case against Swift would result in an inefficient and unnecessarily duplicative expenditure of judicial resources, and would significantly increase the costs of litigation for plaintiff. For these reasons, Swift has failed to establish that Maritz's choice of the forum should be set aside.

**Conclusion**.

For the foregoing reasons, the Court concludes that it has personal jurisdiction over defendant Swift and that Swift has not established that transfer of this action is warranted. The Court will therefore deny Swift's motion to dismiss for lack of personal jurisdiction and improper venue, deny Swift's alternative motion to transfer based on improper venue, and deny as moot plaintiff's motion for jurisdictional discovery.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Swift Prepaid Solution, Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue under Rules 12(b)(2) and (3), and alternative motion to transfer based on improper venue pursuant to 28 U.S.C. § 1404(a), are **DENIED**. [Doc. 65]

**IT IS FURTHER ORDERED** that plaintiff's request for jurisdictional discovery is **DENIED** as moot.

                                                */s/ Charles A. Shaw*
                                              **CHARLES A. SHAW**
                                              **UNITED STATES DISTRICT JUDGE**

Dated this  6th  day of February, 2007.