# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| MARITZ INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:06-CV-761 CAS |
| | ) | |
| C/BASE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Performance Systems Group, Inc.'s ("PSG") motion to dismiss for lack of personal jurisdiction and improper venue under Rule 12(b)(2) and (3), Federal Rules of Civil Procedure. In the alternative, PSG moves for transfer of this action to the United States District Court for the Northern District of Georgia. Plaintiff Maritz Inc. opposes the motion to dismiss. For the following reasons, the Court will deny PSG's motion to dismiss for lack of personal jurisdiction and improper venue and PSG's alternative motion to transfer based on improper venue.

## Background.

Maritz filed this action against a number of defendants alleging infringement of U.S. Patent Nos. 5,689,100 ("the '100 Patent") and 5,956,695 ("the '695 Patent"). The patents relate to computer-based card systems and related methods that allow cardholders to obtain products and/or services from authorized merchants through a credit/debit card network. Maritz brought this action alleging that the defendants have willfully infringed the '100 Patent and the '695 Patent by making, using, offering for sale or selling programs covered by one or more apparatus and/or method claims

of the patents, and by practicing, inducing and/or contributing to the practice of apparatus and methods covered by one or more claims of the patents.

**Personal Jurisdiction Standard**.

A party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996). To defeat a motion to dismiss for lack of personal jurisdiction, however, the non-moving party need only make a prima facie showing of jurisdiction. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)). Because the Court relies on pleadings and affidavits, and did not conduct an evidentiary hearing, it must view the evidence in the light most favorable to the plaintiff, and determine all factual conflicts in its favor. Digi-Tel, 89 F.3d at 522; Radaszewski by Radaszewski v. Telecom Corp., 981 F.2d 305, 309-10 (8th Cir. 1992), cert. denied, 508 U.S. 908 (1993). "[J]urisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, the court may exercise personal jurisdiction over a defendant if the defendant is subject to the court's jurisdiction under the forum state's long-arm statute and if the defendant has sufficient contacts with the forum state to satisfy due process. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104-05 (1987); Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). When considering whether personal jurisdiction exists under the long-arm statute, it is permissible to consider matters outside the pleadings. Stevens v. Redwing, 146 F.3d 538, 543 (8th

Cir. 1998) (citing <u>Land v. Dollar</u>, 330 U.S. 731, 735 n.4 (1947), <u>overruled by implication on other grounds by</u> <u>Larson v. Domestic & Foreign Commerce Corp</u>, 337 U.S. 682 (1949)).

The Missouri long-arm statute provides that an individual or company submits to personal jurisdiction of the courts of the State of Missouri for any cause of action arising from, <u>inter alia</u>, the (1) transaction of any business within the state, (2) the making of any contract within the state; and (3) commission of a tortious act within the state. <u>See</u> Mo. Rev. Stat. § 506.500 (2000). Missouri construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause within the specific categories enumerated in the statute. <u>State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner</u>, 677 S.W.2d 325, 327 (Mo. 1984) (en banc); <u>see</u> <u>Clune v. Alimak AB</u>, 233 F.3d 538, 538, 541 (8th Cir. 2000), <u>cert. denied</u> <u>sub nom</u> <u>Industrivarden Serv. AB v. Clune</u>, 533 U.S. 929 (2001). As a result, the critical inquiry in the personal jurisdiction analysis is whether the exercise of personal jurisdiction over the defendant comports with federal due process standards. <u>Clune</u>, 233 F.3d at 541.

The Due Process Clause limits the power of a state to assert personal jurisdiction over a nonresident defendant. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 413-14 (1984). A state may exercise personal jurisdiction over a nonresident defendant consistent with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984) (citations and internal quotations omitted). The defendant's contact with the forum state must

be purposeful and such that defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A party may anticipate being haled into court in a particular jurisdiction if it "purposefully directed" its activities at residents of the forum, and the litigation results from an alleged injury that "arises out of or relates to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted).

The relevant contacts with the forum state must be more than random, fortuitous or attenuated. Id. at 475 (citations omitted). A defendant must have purposefully availed itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The Due Process Clause precludes personal jurisdiction unless the actions of the defendant created a "substantial connection" with the forum state. McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957).

When deciding an issue of personal jurisdiction in a patent case, a district court must apply law of the Federal Circuit, because the Federal Circuit has exclusive jurisdiction over an appeal from such a case. 3D Systems, Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998). The Federal Circuit has "adopted a three-factor test embodying the Supreme Court's jurisprudence on specific personal jurisdiction." Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003) ("Coyle"), cert. denied, 540 U.S. 1111 (2004). To determine whether jurisdiction over an out-of-state defendant comports with due process under the Federal Circuit test, a court must examine whether "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Coyle, 340 F.3d at 1350. "The first two factors correspond to the 'minimum contacts' prong of the International Shoe analysis, and the third

factor with the 'fair play and substantial justice' prong." Id. (citations omitted). When the plaintiff meets its burden to establish such contacts, the burden shifts to the defendant to prove that the exercise of jurisdiction is unreasonable. Id.

**I**. **Motion to Dismiss for Lack of Personal Jurisdiction**

   **Parties' Arguments.**

PSG asserts that it does not have sufficient minimum contacts with the State of Missouri to subject it to personal jurisdiction, and that at most, its contacts with Missouri are "de minimus." PSG Mot. to Dismiss at 2. Mark Herbert, President of PSG, avers that PSG (1) is a Georgia corporation with its place of business in Atlanta; (2) does not have and does not currently intend to have any offices, facilities or employees located or operating in Missouri; (3) uses a prepaid debit card system to deliver cash rebates and cash incentive awards to its clients or sponsors, who in turn approve, fund and distribute the cards to third-party participants; (4) does not offer the services of its prepaid debit card systems directly to the public; (5) sells its prepaid debit card system services to clients or sponsors through contractual arrangements which are negotiated at its headquarters in Georgia, and that the contracts, purchase orders and invoices are generated and administered in Georgia; and (6) has no control over the distribution of the prepaid debit cards once it makes a sale to its client or sponsor.

In support of its reply memorandum, PSG also provides the affidavit of Steve Damerow, its CEO. Mr. Damerow avers that: (1) the Maritz patents "appear" to apply to filtering technology that PSG does not use; (2) PSG does not own any of the cards used in its programs; (3) PSG does not have a contract with MasterCard, but rather "the bank owns and issues the cards"; (4) the plan sponsor [i.e., PSG's client] distributes the cards and then the processor administers the cards, and

PSG does not perform either of these functions; (5) once PSG introduces the bank and the plan sponsor, its involvement in the particular card program "is significantly diminished"; and (6) PSG has no control over the distribution of the prepaid debit cards once the sale is made to the client or sponsor.

PSG concludes that based on the foregoing, it has done nothing "to purposefully avail itself to the jurisdiction of this Court." Herbert Aff. at 3, ¶ 12; Damerow Aff. at 3, ¶ 10. PSG contends that even if one of its cards entered Missouri in the stream of commerce, the mere introduction of a product into the stream of commerce is insufficient to establish personal jurisdiction, and some other act is required to satisfy constitutional due process requirements, citing Asahi Metal Indus. Co., Ltd. v. Superior Ct. of California, 480 U.S. 102, 113 (1987). PSG also argues that the claim does not arise out of its activities in Missouri, as patent infringement occurs when a party without authorization makes, uses, sells or offers to sell any patented invention. PSG asserts that the alleged infringement in this case is of a computer program, and contends that it made and uses the allegedly infringing computer program and debit card system exclusively within the State of Georgia.

Finally, PSG argues that it would be unfair and unreasonable to require it to defend this action in Missouri because (1) it does not have minimum contacts with the forum, (2) it has not directed its activities within Missouri and has no employees or offices in Missouri, (3) all of its allegedly improper conduct occurs exclusively in Georgia, and (4) most, if not all, of the necessary witnesses and documentation are located in Georgia and it would be unduly burdensome for PSG to transport these witnesses and documents to Missouri from Georgia. PSG also asserts that in a substantially similar matter, Judge Stohr of this district granted its motion to dismiss for lack of personal jurisdiction, see Meridian Enterprises Corp. v. C/Base Inc., No. 4:04-CV-1522 DJS (E.D. Mo. Aug. 16, 2005).

Maritz responds that PSG's stored value card programs, among others, infringe its patents, and that anyone who makes, uses, offers to sell, sells or imports a patented system infringes the patent under 35 U.S.C. § 271(a). Maritz asserts that the following activities relating to its patent infringement allegations have occurred in the Eastern District of Missouri: PSG's prepaid cards are distributed to individual cardholders, the cardholders then use their cards to pay for goods or services at local authorized merchants, and PSG provides a number of services to its cardholders via the Internet or a toll-free telephone number. Maritz states that under controlling Federal Circuit law, when a PSG card is used by a cardholder to make a purchase, the situs of infringement is the location where the card is used. Maritz contends that PSG cannot deny that its cards have been distributed to and used in Missouri, and therefore acts of alleged infringement have occurred in this district and personal jurisdiction exists over PSG.

Maritz states that according to PSG's Internet website, PSG: (1) offers prepaid card programs in general categories including internal and external sales, dealer sales incentives, product promotions, consumer/user rebates and promotions, and strengthening brand recognition; (2) touts its ability to customize its prepaid card and Internet programs to meet individual client objectives; (3) offers services including creating "customized website[s] for cardholder support and activity inquiries"; and (4) provides "fulfillment of card to cardholders" and "in-house client and cardholder support by toll free voice number and email."

Maritz asserts that PSG has conducted card-based consumer and incentive programs for national companies that have a significant presence in this jurisdiction. Maritz states that PSG conducted a card-based national consumer incentive program for Uniroyal Tires operated through Uniroyal's distributors, under which customers who purchased four Uniroyal tires were awarded a

7

$50 stored value card. Maritz asserts that this promotion was a "private label stored value card" program, which is one of the accused products in the suit. Maritz further asserts that the Uniroyal website, www.uniroyal.com, lists 125 Uniroyal dealers within 100 miles of St. Louis, although this includes stores in Illinois as well. Maritz states that it believes there are at least seventy-seven Uniroyal Tire dealers in this jurisdiction, and based on PSG's campaign, "it is highly likely that [PSG's] cards were distributed to and redeemed by consumers at Uniroyal Tire dealers in the Eastern District of Missouri." Maritz's Opp. to Mot. Dismiss at 3. Maritz contends that PSG's national prepaid card programs, such as the Uniroyal program, undoubtedly involve cardholders from Missouri, including the Eastern District of Missouri, and would also involve transactions in this district when merchants in this district accept PSG's prepaid cards for payment from cardholders.

Maritz emphasizes that PSG does not deny that residents of this district are or have been cardholders in one or more of its prepaid card programs, or that transactions using these cards were initiated in this district. Maritz states that PSG's CEO, Steven Damerow, admitted in his deposition that he was unaware of any mechanism used by PSG to track where its cards are redeemed. Damerow Dep. at 13:9-16. Maritz also notes that PSG does not allege that none of its clients have locations or operations in this district.

Maritz asserts that PSG provides a number of services directly to its cardholders throughout the United States on its own website and custom websites, including participant enrollment, reward claims and access to account balances, and that cardholders access these services by logging into the website using a username and password created at the time the cardholder created his or her account through the website. Maritz also asserts that PSG offers cardholders telephone support.

Finally, Maritz asserts that when PSG utilizes the MasterCard network option to provide its prepaid card products and services, a significant portion of the processing is done in the Eastern District of Missouri at MasterCard International's Global Technology and Operations Center located at Winghaven in O'Fallon, Missouri. The O'Fallon location processes about 40 million card transactions per day, sorts out settlements for 25,000 members, and clears approximately $1 trillion worth of purchases each year.[1] Maritz asserts that the card network is the critical link between the merchants, which accept PSG's prepaid cards, and PSG's (or its agent's) databases, which store the participant's account information and authorize the transaction.

Based on the foregoing, Maritz argues that PSG has significant contacts with this district, because the evidence indicates that district residents have used PSG's prepaid cards at merchants located in the district. Maritz contends that PSG's nationwide card programs, such as the Uniroyal program discussed above, have "undoubtedly had a significant number of Missouri cardholders" who have used their cards for purchases at merchants in this district. Maritz's Opp. to Mot. Dismiss at 5. Maritz also argues that PSG purposefully directs its activities at Missouri residents by directly providing services to cardholders throughout the United States on its Internet website and the custom websites it creates for its clients, where cardholders can check their balances or transaction activity, and also by providing telephone support. Maritz states that PSG's card system includes the cards themselves, the credit/debit card network, and the processors and databases that are involved in authorizing and settling the card transactions. Because of this, Maritz argues that the geographic

---

[1]Although PSG objects to Exhibit 9 attached to Maritz's opposition memorandum (an article from www.stlcommercemagazine.com/archives/december2004/top50.html) on the basis that it is hearsay, the article is authenticated by the Declaration of Marc W. Vander Tuig, submitted as Exhibit 4 in support of Maritz's opposition to the motion to dismiss filed by defendant Swift Prepaid Solutions, Inc. See Doc. [69].

scope of PSG's system is limited only by where the cardholders can use their cards to access the card's stored value.

Maritz argues that PSG does not merely place its cards in the stream of commerce in Georgia, but rather is a service provider and its service only begins when the cards are shipped. Maritz asserts that the "core of the service offered by [PSG], in addition to the support services . . . , is allowing cardholders to access the value associated with the cards by allowing them to use the cards to purchase goods or services at authorized merchants." Maritz Opp. to Mot. Dismiss at 7. Maritz contends that by providing services to cardholders in this district after the cards have been distributed, and by accepting card transaction initiated by residents of this district, PSG's actions satisfy the more stringent stream of commerce test articulated by Justice O'Connor in Asahi.

Maritz asserts that its claims arise out of PSG's activities in this district, because a cardholder's use of PSG's accused card products in this district constitutes direct infringement of the system claims of the '100 and '695 patents under 35 U.S.C. § 271(a), and by accepting and facilitating these transactions and providing the other cardholder services discussed above, PSG is actively inducing this direct infringement under 35 U.S.C. § 271(b). In support, Maritz cites NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1174 (2006), which held that the "use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." Id. at 1317. The Research in Motion case, which concerned the BlackBerry wireless e-mail system, held that the BlackBerry system was "used" where customers used their handheld devices to access the e-mail system. Id. Maritz contends that when PSG's cardholders use a PSG prepaid card to purchase a product or service, they control the transmission

of the transaction data being transmitted over PSG's card system and benefit from this exchange of information, and this constitutes an infringing "use" of the system under Section 271(a).

Maritz argues that the assertion of personal jurisdiction over PSG in this district is fair and reasonable because PSG has sufficient contacts with the district to satisfy due process and its claims against PSG arise out of PSG's activities in the district. Maritz also argues that requiring PSG's witnesses to make the approximately two-hour flight from Atlanta to St. Louis in the event of trial does not qualify as one of the "'rare' situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable." Coyle, 340 F.3d at 1352.

**Discussion**.

As stated above, under the Federal Circuit's three-part test for personal jurisdiction, a court must examine is whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Coyle, 340 F.3d at 1350.

The fundamental basis for minimum contacts is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475. The Supreme Court has stated that personal jurisdiction may be exercised consonant with due process "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen, 444 U.S. at 298. In the Supreme Court's most recent discussion of the stream of commerce theory, Justice O'Connor opined that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi, 480 U.S. 102, 113 (1987). Five justices

11

refused to adopt Justice O'Connor's articulation of a stream of commerce "plus" theory, and Justice Brennan's position, adopted by three others, was that such "additional conduct" is not needed when the defendant places goods in a stream of commerce defined as "the regular and anticipated flow of products from manufacture to distribution to retail sale." Id. at 117.

The Federal Circuit has not resolved whether to follow Justice O'Connor's interpretation of the stream of commerce standard or Justice Brennan's. See Commissariat A L'Energie Atomique v. Chi Met Optoelectronics Corp., 395 F.3d 1315, 1322 (Fed. Cir. 2005). For purposes of this case, the result is the same under either standard. When the evidence is viewed in the light most favorable to Maritz, it is clear that PSG does more than merely place its prepaid cards in the stream of commerce in Georgia. PSG's business involves not only the issuance of prepaid cards to its clients, but also the provision of substantial services to the individuals to whom the cards are given by PSG's clients. PSG offers services such as permitting cardholders to check their card balances or transaction activity through its Internet website or custom websites that it creates for its clients, and telephone support.

The evidence currently before the Court indicates that residents of this district are using PSG's prepaid cards at merchants located in this district. PSG does not assert that its cards are not used in this district, or that its clients are not located in this district. As discussed above, PSG's clients include Uniroyal Tires, which has dozens of distributors in this district, and PSG conducted an allegedly infringing card-based national consumer incentive program for Uniroyal. In the course of providing prepaid card programs and services to its clients, PSG is undoubtedly providing these products and services to Missouri residents. See Commissariat, 395 F.3d at 1320 (circumstantial

evidence of contact with the forum state can be sufficient to establish jurisdiction when defendant fails to rebut the factual inference).

The general rule is that the contacts a court must analyze in determining personal jurisdiction are those of the defendant, not a third party. See Hanson v. Denckla, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.") If contacts with the forum state "result from the acts of others, unforeseen and unintended by the defendant, jurisdiction may not be exercised because the contact was not the result of the defendant's purposeful availment." 16 Moore's Federal Practice, § 108.42[3][b][I] (3d ed. 2006). "In some situations, however, the defendant may be considered to have established contacts through the acts of a third party." Id. In this case, Maritz alleges that PSG has clients with a significant presence in this district, such as Uniroyal Tires. Contacts within this district by customers of Uniroyal Tires who participated in its card-based national consumer incentive promotion created by PSG are not unilateral and cannot be termed "unforseen and unintended," but rather are the result of PSG's purposeful availment.

Moreover, by directly providing services to cardholders in this district after the cards have been distributed, and accepting card transactions initiated by those cardholders, PSG's actions meet even the more stringent stream of commerce "plus" standard. See, e.g., Asahi, 480 U.S. at 112 (additional actions, such as "establishing channels for providing regular advice to customers in the forum State," satisfies the standard set forth by Justice O'Connor). PSG has therefore purposefully directed its activities to the residents of this district.

The Court also concludes that Maritz's claim arises out of and relates to PSG's activities in Missouri. PSG's card system includes the prepaid cards, the merchants' point of sale equipment that

accepts the cards, and the credit/debit card network and related processors that authorize the card transactions. A cardholder's use of PSG's accused card products in Missouri would constitute direct infringement of the system claims of the '100 and '695 patents under 35 U.S.C. § 271(a). By facilitating these card transactions, and providing the other cardholder services discussed above, PSG is actively inducing direct infringement under 35 U.S.C. § 271(b). When PSG's cardholders use a PSG prepaid card to purchase a product or service, they control the transmission of the transaction data being transmitted over PSG's card system and benefit from this exchange of information. This constitutes an infringing "use" of the system under § 271(a). See Research in Motion, 418 F.3d at 1317.

This case is readily distinguishable from the Meridian Enterprises decision on which PSG relies to support its contention that personal jurisdiction over it does not exist. In Meridian Enterprises, which concerned a patent infringement claim against PSG and other defendants on a computer programming and data processing system for a credit card incentive award program, Judge Stohr concluded that Meridian did not allege any act by PSG other than "the mere fortuitous entry of some cards into Missouri, that would establish personal jurisdiction." Meridian Enterprises, No. 4:04-CV-1522, slip op. at 5 (Aug. 16, 2005). Judge Stohr also concluded that Meridian could not establish that its claim arose out of PSG's alleged contacts with Missouri, because it did not allege that any infringing card had been used in Missouri. Id. at 6. In contrast, as discussed above, there is evidence in this case that the entry of PSG's cards into Missouri is not fortuitous, because its client Uniroyal Tire has a significant presence in this district and PSG conducted a nationwide reward card incentive program for Uniroyal. In addition, PSG offers a service network including a toll-free number and its interactive Internet website and custom websites created for clients to offer services

to the cardholders themselves. There is also evidence that the PSG cards have been used by cardholders in this district. Judge Stohr recognized in <u>Meridian Enterprises</u> that if a cardholder used one of the cards in Missouri--as Maritz asserts occurs in PSG's issuance of cards to clients in this district--such use would "involve use of the allegedly infringing computer program." <u>Id.</u> at 6-7.

The cases on which PSG relies to support its contention that Maritz's claim does not arise out of PSG's activities in Missouri are also distinguishable. In <u>Freedom Wireless, Inc. v. Boston Communications Group</u>, 198 F.Supp.2d 11 (D. Mass 2002), the defendant was a Canadian corporation that operated a prepaid wireless telephone service system for Canadian residents. The defendant transmitted cell phone calls from towers in Canada into Massachusetts, where its billing system was located, and then back into Canada. <u>Id.</u> at 13-14. The plaintiff contended that defendant's actions infringed its patents for prepaid wireless technology. The court concluded that the allegedly infringing activity could not be separated from the activity in Canada, because if no phone call was initiated and transmitted to the towers in Canada, no infringing activity could take place in the United States. <u>Id.</u> at 17-18. As a result, the court determined that the "control point" for the infringing activity was located in Canada and not at the billing database located in Massachusetts, and consequently there could be no infringement because the allegedly infringing technology was not made, used, offered or sold within the United States. <u>Id.</u>

In <u>USA Payments, Inc. v. Hotel Ramada of Nevada</u>, 2001 WL 764923 (N.D. Cal. June 21. 2001), the defendant utilized an ATM system at its resort and casino in Las Vegas, Nevada, which the plaintiff alleged infringed its patent. The court determined that personal jurisdiction did not exist over the defendant in California, because the use of the allegedly infringing ATM systems occurred solely in Las Vegas. <u>Id.</u> at *2-3. The court rejected plaintiff's argument that the defendant's

15

marketing and promotion of its casino to California residents was an "offer to sell" the allegedly infringing ATM system within the meaning of the patent laws, and therefore the defendant's promotional efforts could not serve as a basis for personal jurisdiction over it in California. Id. at *3.

In contrast to <u>Freedom Wireless</u> and <u>USA Payments</u>, the facts of this case, as found for purposes of the instant motion and when viewed in the light most favorable to Maritz, tend to show that PSG has clients with a significant presence in this district, the allegedly infringing PSG prepaid cards have been used by residents of this district at merchants located here, and PSG offers services directly to residents of this district on its website and the custom websites it creates for its clients. As a result, the cases cited by PSG do not offer support for its position.

PSG argues that the assertion of personal jurisdiction over it is unreasonable and unfair because it does not have minimal contacts with the forum, has not directed its activities within Missouri, has no employees or offices in Missouri, and all of its allegedly improper conduct occurs exclusively in Georgia. PSG also asserts that most, if not all, necessary witnesses and documentation are located in Georgia, and that it would be unduly burdensome for it to be required to transport these witnesses and documents to Missouri from northern Georgia to defendant plaintiff's claims, when it has had no contact within Missouri.

The Court has determined that PSG has sufficient minimum contacts with the forum to justify the exercise of personal jurisdiction. Once a plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes the defendant's burden to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King</u>, 471 U.S. at 477. "The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the

16

interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." Coyle, 340 F.3d at 1352 (citations omitted).

PSG has not demonstrated that it would be unreasonable for the Court to exercise jurisdiction over it. First, the geographic burden for Atlanta-area defendants to litigate in St. Louis is not onerous. Second, Missouri has a substantial interest in protecting its residents from injuries, including patent infringement. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir.), cert. dismissed, 512 U.S. 1273 (1994). Missouri "also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action." Id. Third, Maritz has a substantial interest in protecting its patents from infringement. Fourth, concerning the interstate judicial system's interest in obtaining efficient resolution of disputes, if Maritz's claims against PSG were transferred to Georgia, there would be two cases concerning this dispute, which would result in an inefficient and wasteful duplication of effort by two courts. Finally, there is no conflict between the interests of Missouri and Georgia in furthering their own respective substantive laws, as the same body of federal patent law would govern the patent infringement claims regardless of the forum. For these reasons, the Court concludes that the exercise of personal jurisdiction over PSG is fair and reasonable.

Based on the facts set forth above and relevant precedent, the Court concludes that Maritz has met its burden to establish a prima facie showing that defendant PSG has sufficient minimum contacts in the State of Missouri to permit the exercise of personal jurisdiction over it consistent with

due process principles.  As a result, PSG's motion to dismiss for lack of personal jurisdiction should be denied.[2]

## II.  Alternative Motion to Transfer Venue

In the alternative, PSG moves the Court to transfer venue to the United States District Court for the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a).  PSG asserts that in determining such a motion, the Court should consider (1) the plaintiff's choice of forum; (2) the convenience of the parties and the witnesses; and (3) the interests of justice, citing Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248, 254 (7th Cir. 1996).  PSG argues that Georgia is the location where the alleged infringement occurred and where virtually all of the events giving rise to this litigation occurred, and that plaintiff and PSG are each subject to the personal jurisdiction of the Georgia court.

Maritz responds that PSG's alternative motion to transfer venue should be denied because (1) the convenience of the parties and witnesses weighs against transferring the case; and (2) the interests of justice and the conservation of judicial resources weigh against transfer because it would result in the inefficient and unnecessarily duplicative expenditure of judicial resources, as there are multiple

---

[2]Although the title of PSG's combined motion and memorandum includes a motion to dismiss for lack of venue under Rule 12(b)(3), Fed. R. Civ. P., PSG does not address dismissal for improper venue in the body of its memorandum.  As a result, the Court need not address this matter further.  Nonetheless, such a motion would be without merit.  Under 28 U.S.C. § 1400(b), venue in a patent case is proper where the defendant "resides," or where it "committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Under 28 U.S.C. § 1391(c), a corporate defendant resides where it is subject to personal jurisdiction.  Thus, in a patent infringement case, venue is proper in any judicial district where the defendant is subject to personal jurisdiction.  See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1578, 1584 (Fed. Cir. 1990), cert. denied, 499 U.S. 922 (1991).  Because the Court has concluded that PSG is subject to personal jurisdiction in this district, the motion to dismiss for improper venue should be denied.

defendants in the case which would remain in this district; and it would significantly increase Maritz's costs if it were required to litigate the same issues in two different forums.

As a procedural matter, the motion to transfer venue is governed by the law of the Eighth Circuit. See Storage Technology Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003). The Eighth Circuit has stated that federal courts generally give "considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir.), cert. denied, 522 U.S. 1029 (1997). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

The initial inquiry in ruling on a motion under § 1404(a) is whether this case "might have been brought" in the Northern District of Georgia. As noted above, venue in a patent case is proper in any district where the defendant resides. See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1578, 1584 (Fed. Cir. 1990), cert. denied, 499 U.S. 922 (1991). PSG is an Georgia corporation with its principal place of business in Buffalo Grove, Georgia. Therefore, this action could have been brought initially in the Northern District of Georgia.

In determining whether or not to transfer venue, the Court must consider the three general categories of factors stated in § 1404(a): (1) the convenience of the parties; (2) the convenience of

the witnesses; and (3) whether the transfer would be in the interest of justice. Terra Int'l, 119 F.3d

at 691. "Courts have not, however, limited a district court's evaluation of a transfer motion to these

enumerated factors. Instead, courts have recognized that such determinations require a case-by-case

evaluation of the particular circumstances at hand and a consideration of all relevant factors."[3] Id.

In this case, the convenience of the parties is in balance. It is more convenient for Maritz to

litigation this action here, and it is more convenient for PSG to litigate in the Northern District of

Georgia. This factor therefore does not weigh in favor of transfer, as transfer would merely shift the

inconvenience from PSG to the plaintiff. "Merely shifting the inconvenience from one side to the

other . . . obviously is not a permissible justification for a change of venue." Terra Int'l, 119 F.3d at

697 (internal quotation omitted).

PSG asserts that the convenience of the witnesses is best served by transfer, as its key

witnesses who live in Atlanta would be "tremendously inconvenienced" as well as "out of reach of

this Court." PSG identifies its former President, Mr. Jerry Ufflier, as being one of a witness with

"intimate personal knowledge during a very relevant period." PSG Mot. and Brief at 9. PSG does

not identify any of its other witnesses or those of the plaintiff. It appears to the Court that most of

---

[3]Factors which courts have considered in deciding a motion to transfer under § 1404(a) include, under the "convenience" prongs, (1) the convenience of the parties, (2) the convenience of the witnesses--including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) accessibility of records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each state's forum law. Factors considered under the "interest of justice" prong include (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. See Terra Int'l, 119 F.3d at 696.

the key witnesses for this aspect of the case will be employees of Maritz and PSG, and therefore neither jurisdiction would be necessarily more convenient for the witnesses as a whole.

PSG alludes to the issue of availability of compulsory process to require the attendance of necessary witnesses. The "question of the accessibility of witnesses depends upon whether those witnesses will willingly appear, whether they can be compelled to appear, and whether alternative means of producing their testimony exist." Terra Int'l, Inc. v. Mississippi Chem. Corp., 922 F. Supp. 1334, 1360 (N.D. Iowa 1996) (citations omitted), aff'd, 119 F.3d 688 (8th Cir.), cert. denied, 522 U.S. 1029 (1997). There is no indication who the potentially unwilling witnesses are, or whether they could be made available by deposition. PSG's contention is unsubstantiated, as it has made no showing that any particular witness or essential witness will refuse to come to Missouri voluntarily, making compulsory process necessary. Certainly, non-party witnesses may not be willing to travel to trial in Missouri, and a Missouri forum may not be able to compel the appearance of non-party Georgia witnesses, but there is no showing that any such witnesses

> cannot be compelled to appear for discovery, in a proper place, pursuant to the wide reach of discovery under the Federal Rules of Civil Procedure, nor is there any convincing showing that the testimony of any necessary witness cannot be adequately presented by deposition, either read into the record from a transcript, or in the form of a videotaped deposition played for a jury.

Id. (citing Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992); Moses v. Business Cards Express, Inc., 929 F.2d 1131, 1138-39 (6th Cir.), cert. denied, 502 U.S. 821 (1991)).

For these reasons, the Court finds that the balance of the convenience of the witnesses does not weigh in favor of transfer, as transfer would merely shift the inconvenience from the defendant to the plaintiff.

Finally, the interests of justice and the conservation of judicial resources weigh against transfer. PSG is one of several defendants remaining in this action. Transfer of Maritz's infringement case against PSG would result in an inefficient and unnecessarily duplicative expenditure of judicial resources, and would significantly increase the costs of litigation for plaintiff. The Court finds that PSG has failed to meet its burden to establish that Maritz's choice of the forum should be set aside and therefore its alternative motion to transfer venue should be denied.

**Conclusion**.

For the foregoing reasons, the Court concludes that it has personal jurisdiction over defendant PSG and that PSG has not established that transfer of this action to the Northern District of Georgia is warranted. The Court will therefore deny PSG's motion to dismiss for lack of personal jurisdiction and improper venue, and deny PSG's alternative motion to transfer based on improper venue.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Performance System Group, Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue under Rules 12(b)(2) and (3), and its alternative motion to transfer based on improper venue pursuant to 28 U.S.C. § 1404(a), are **DENIED**. [Doc. 43]

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this _7th_ day of February, 2007.